# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILIP JOHN VALENCIA,<br><br>            Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>            Defendant. | Case No.  1:15 -cv-00397-SAB<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S SOCIAL SECURITY APPEAL AND REMANDING ACTION<br><br>(ECF No. 12, 13) |

## I.

## INTRODUCTION

Plaintiff Philip John Valencia ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from cervical degenerative disc disease, status post C5-6 fusion and C4-7 laminectomy; status post closed head injury and skull fracture; cranial nerve palsy; greater occipital neuralgia; low average intelligence; adjustment disorder; history of alcohol abuse in

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge.  (See ECF Nos. 6, 8.)

1

1 reported remission; and marijuana dependence in reported remission.  For the reasons set forth
2 below, Plaintiff's Social Security appeal shall be granted in part and denied in part.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income on May 26, 2010.  (AR 105.)  Plaintiff's applications were initially denied on September 28, 2010, and denied on reconsideration on May 9, 2011.  (AR 150-154, 157-161.)  Plaintiff requested and received a hearing before Administrative Law Judge Sharon L. Madsen ("the ALJ").  Plaintiff appeared for a hearing on May 29, 2012.  (AR 36-66.)  On June 12, 2012, the ALJ found that Plaintiff was not disabled.  (AR 126-140.)  Plaintiff sought review by the Appeals Counsel which granted the request; and on December 5, 2013, the appeals counsel remanded the action to the ALJ to consider the opinions of Dr. McDonald and new evidence of treatment to Plaintiff's spine.  (AR 145-148.)  On remand, Plaintiff appeared for a second hearing on June 17, 2014, before the same ALJ.  (AR 69-99.)  On August 8, 2014, the ALJ found that Plaintiff was not disabled.  (AR 12-29.)  The Appeals Council denied Plaintiff's request for review on January 20, 2015.  (AR 1-3.)

### A. Hearing Testimony

Plaintiff testified at a second hearing on June 17, 2014.  (AR 69-90, 91-92.)  Plaintiff was 6'3" tall and weighed 210 pounds.  (AR 70-71.)  Plaintiff was single with three children, ages 15, 11, and 8, and one more on the way.  (AR 71.)  Plaintiff lives in a house with his three children and his ex-girlfriend/caretaker.  (AR 71-72.)  Plaintiff does not drive and his caretaker drives him.  (AR 72.)  Plaintiff graduated from high school and had six months of training as a cashier but was unable to finish.  (AR 72.)  Plaintiff was incarcerated four to five years ago.  (AR 72.)

Depending on how he is feeling, Plaintiff occasionally needs help showering.  (AR 73.) Plaintiff does household chores, such as washing clothes and shopping.  (AR 73.)  On a typical day, Plaintiff gets up in the morning and showers and gets his children ready for school.  (AR 73-74.)  During vacation, he spends time with his children.  (AR 74.)  Plaintiff cannot walk very far so he just takes care of his children.  (AR 74.)  They play video games, go outside, talk, and visit

1  his brother-in-law on occasion. (AR 74.) On a bad day, Plaintiff stays in bed or just sits around.
2  (AR 74.) Plaintiff has not been taking a lot of naps. (AR 74.) Every other day is a bad day.
3  (AR 86.) Plaintiff does not sleep well. (AR 87.) Plaintiff sleeps at least half the day. (AR 88.)
4  During an eight hour day, Plaintiff would sleep eight hours. (AR 89.)

5  Plaintiff worked as a laborer for an irrigation company digging holes and installing pipe
6  and sprinklers. (AR 75-76, 91.) Plaintiff filled in the trenches. (AR 76.) Plaintiff also worked
7  for a prune dryer feeding the machine. (AR 76.) Plaintiff pushed the heavy trays into the dryer.
8  (AR 76, 91.) Plaintiff did various jobs for California Dairies, such as cleaning and maintenance.
9  (AR 77.) Plaintiff also worked for a company stacking pallets. (AR 77.)

10  Plaintiff had a head injury on August 3, 2000. (AR 78.) He has constant headaches,
11  cannot feel the left side of his face, and does not see very well out of his left eye. (AR 78.) He
12  has drainage when he gets hot. (AR 79.) Plaintiff's headaches occur every day and he takes
13  Ibuprofen and Norco, and receives trigger point injections. (AR 79.) The injections help for a
14  couple weeks. (AR 79.) Plaintiff has a retainer for his jaw issue. (AR 80.) If he does not use
15  the retainer he wakes up with a sore jaw and cannot talk in the morning. (AR 80.) Plaintiff's
16  shoulder still gets tight on occasion. (AR 80.) Plaintiff is receiving injections in the muscle.
17  (AR 80.) Plaintiff also has neck pain and stiffness. (AR 81.) Sometimes his neck feels fine, but
18  most of the time when he turns his head he hears a pop and it scares him. (AR 81.) Plaintiff had
19  surgery on his neck but he feels it is worse because now he has to watch himself. (AR 81.) The
20  pain is the same as prior to the surgery. (AR 81.) Plaintiff is going to be starting physical
21  therapy again. (AR 82.) Plaintiff takes medications that takes the edge off the pain to a certain
22  extent. (AR 82.) Plaintiff also uses a tens unit. (AR 88.)

23  Plaintiff cannot lift anything heavy because he does not feel steady on his feet. (AR 82.)
24  Any little thing could knock him over. (AR 83.) Plaintiff is able to lift a gallon of milk. (AR
25  83.) Plaintiff can stand an hour to two before having to sit down. (AR 83.) He can walk one
26  block. (AR 83.) Plaintiff can sit for an hour before having to lie down. (AR 83-84.) Plaintiff
27  uses a cane on occasion when his leg pain is bad. (AR 84, 87.) Plaintiff does not try to pick
28  things up off the ground. (AR 84.) Plaintiff has problems lifting his left arm over his head. (AR

84.) Plaintiff cannot sit and use a keyboard because it puts pressure on his neck. (AR 84.)

Plaintiff gets sad because he cannot provide for his family. (AR 85.) His ex-girlfriend is pregnant and it is hard on him to be having another child. (AR 85.) Plaintiff is able to focus on television most of the time. (AR 85.) When he is focused he does not pay attention to anyone. (AR 85.) Plaintiff's ex-girlfriend handles the finances. (AR 85.) Sometimes Plaintiff has problems with other people because they judge him and he finds it irritating. (AR 85.) Plaintiff takes medication that helps his depression but it upsets his stomach making it difficult for him to eat. (AR 86.)

A Vocational Expert ("VE"), Jose Chaparro testified at the hearing. (AR 90-98.) The VE categorized Plaintiff's prior work as a landscape laborer (DOT 408.687-014), heavy, unskilled, SVP 2; stores laborer (DOT 922.687-058), medium, unskilled, SVP 2; industrial cleaner (DOT 381.687-018), medium and unskilled, SVP 2, and dehydrator tender (DOT 523.685-054), heavy, semi-skilled, SVP 3. (AR 92-93.)

The ALJ proffered a hypothetical of an individual of the same age, education, and work background as Plaintiff who could lift and carry twenty pounds occasionally and ten pounds frequently; could sit, stand, or walk six to eight hours with frequent stooping, crouching, crawling, climbing, kneeling, and occasional climbing ladders, ropes, or scaffolds, and was restricted to simple, routine tasks. (AR 93.) The VE opined that this individual would not be able to perform any of Plaintiff's past work. (AR 93.) This individual would be able to work as a cashier II (DOT 211.462-010), light and unskilled, SVP 2, with 1,699,000 jobs nationally and 184,000 in California; fast food worker (DOT 311.472-010), light and unskilled, SVP 2 with 2,324,000 jobs nationally and 226,000 jobs in California; and a cafeteria attendant (DOT 311.677-010), light and unskilled, SVP 2, with 146,000 jobs in the national economy and 24,200 in California. (AR 93-94.)

The ALJ proffered a second hypothetical of an individual with the same postural as the first hypothetical who was limited to only occasional overhead reaching and no static neck positioning, like keyboarding, having to look in one position for a long time. (AR 94.) The VE opined that this individual would be able to perform the same jobs identified in the prior

1 hypothetical. (R 94.)

2       The ALJ proffered a third hypothetical of an individual with the same posturals as the
3 second hypothetical. This individual was limited to lifting and carrying ten pounds frequently or
4 occasionally, could sit six hours, stand or walk two hours, and was limited to simple routine
5 tasks. (AR 95.) This individual would be able to work as a ticket seller (DOT 211.467-030),
6 light and unskilled with an SVP of 2, with 41,000 jobs nationally, and 4,400 jobs in California.
7 This individual could also work as a cashier II with reduced numbers for jobs that allow sitting
8 and not a whole lot of lifting. (AR 95-96.) A reduction of fifty percent off the figures provided
9 in hypothetical number one would compensate for this. (AR 96.) This individual could also
10 work as a paper pattern folder (DOT 794.687-034), light and unskilled with an SVP 1, there are
11 10,100 jobs in the national economy and 1,400 in California. (AR 96.)

12       The ALJ proffered a fourth hypothetical of an individual with the same capacity as the
13 third hypothetical, but this individual would miss need an additional two to four thirty minute
14 breaks a day. (AR 96.) The VE opined that there would be no work for this individual. (AR
15 96.)

16       Plaintiff's attorney proffered a hypothetical the same individual as the first with the
17 additional limitations that this individual would be moderately impaired in ability to maintain
18 adequate attention and concentration; moderate limitations with his ability to manage the stress
19 of a routine workday, adapt to changes in the work routine, ability to interact appropriately with
20 co-workers, supervisors, and the public on a regular basis, ability to accept instructions from
21 others, and in social judgment and awareness or socially appropriate behavior. (AR 97.) The
22 individual is moderately impaired in his ability to function independently and sustain an ordinary
23 routine without special supervision and the likelihood of emotionally deteriorating in a work
24 environment. (AR 97.) Moderately limited was defined to mean off-task for ten percent of the
25 day. (AR 97.) The VE opined that this individual could not perform any work in the national
26 economy. (AR 97.)

27       Plaintiff's attorney proffered a second hypothetical of that same individual who would
28 also be required to lay down at least one hour during a normal workday. (AR 98.) The VE

opined that there would be no work for this individual.  (AR 98.)

**B.     ALJ Findings**

The ALJ made the following findings of fact and conclusions of law:

- Plaintiff met the insured status requirements of the Social Security Act through June 30, 2010.
- Plaintiff has not engaged in substantial gainful activity since January 5, 2010, the alleged onset date.
- Plaintiff has the following severe impairments: cervical degenerative disc disease, status post C5-6 fusion and C4-7 laminectomy; status post closed head injury and skull fracture; cranial nerve palsy; greater occipital neuralgia; low average intelligence; adjustment disorder; history of alcohol abuse in reported remission; and marijuana dependence in reported remission.
- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.
- Plaintiff has the residual functional capacity to perform light work.  Specifically, he is able to lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk 6 to 8 hours and sit for 6 to 8 hours in an 8 hour day; frequently stoop, crouch, crawl, climb, and kneel; occasionally reach overhead and climb ladders, ropes, and scaffolds; and is limited to simple routine tasks.  Plaintiff is unable to perform static neck movements as in keyboarding.
- Plaintiff is unable to perform his past relevant work.
- Plaintiff was born on June 28, 1974, and was defined as a younger individual on the alleged disability onset date.
- Plaintiff has at least a high school education and is able to speak English.
- Transferability of job skills is not an issue because Plaintiff's past relevant work is unskilled.
- Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy

that he can perform.

- Plaintiff has not been under a disability as defined in the Social Security Act from January 5, 2010 through the date of decision.

(AR 17-28.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g).

7

In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff contends that the residual functional capacity adopted by the ALJ did not capture the limitations opined by Dr. Garcia, and the jobs identified by the VE require abilities beyond Plaintiff's residual functional capacity.

**A.    Residual Functional Capacity**

1.    Moderate Limitations

Plaintiff argues that the ALJ erred by failing to include the mental limitations opined by Dr. Garcia. Plaintiff argues that the ALJ failed to include Plaintiff's moderate limitations in determining that he was able to perform simple repetitive tasks. Defendant responds that the medical findings are not Plaintiff's residual functional capacity and the ALJ properly considered the medical evidence in translating Plaintiff's limitations into work related functions.

The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional.  See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).  Here, there is no treating physician.  The opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician.  Lester, 81 F.3d at 830.  An examining physician's uncontradicted opinion "may be rejected only for clear and convincing reasons, and when an examining physician's opinion is contradicted by another doctor, the examining physician's opinion may be rejected only for specific and legitimate reasons supported by substantial evidence in the record."  Bell v. Astrue, 640 F. Supp. 2d 1247, 1252 (E.D. Cal. 2009).

The ALJ found that Plaintiff's limitation to simple routine tasks is consistent with the opinion of Dr. Garcia who reviewed the record for the state agency and determined that Plaintiff was capable of performing simple one to two-step tasks.  (AR 24.)  Further, the ALJ found that Dr. Garcia's opinion is supported by the findings and opinions of two psychological consultative evaluators and great weight was given to the opinions of the consultative examiners.  (AR 24.) The record showed that Plaintiff had received no mental health treatment, and the only opinions in the record are those from Dr. Garcia and the consultative evaluators.[2]  (AR 24.)

On May 2, 2011, Dr. Garcia performed a mental residual functional capacity assessment. (AR 410-423.)  Dr. Garcia found that Plaintiff had organic mental disorders, personality disorders, and substance addiction disorders.  (AR 410.)  Dr. Garcia evaluated Plaintiff's understanding and memory, sustained concentration and persistence, social interaction, and adaption, and found that Plaintiff had mild limitations in his restriction of activities of daily living and difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace.  (AR 418, 421-422.)  Plaintiff had no episodes of decompensation of extended duration.  (AR 418.)  Dr. Garcia found that Plaintiff was capable of understanding, remembering, and carrying out simple one to two step tasks.  (AR 423.)  Plaintiff

---

[2] Plaintiff was also evaluated by Dr. McDonald.  The ALJ did not address this opinion and Plaintiff does not contend this was error.  The Court notes that this opinion was partially the basis for remand by the appeals counsel which found the opinion was inconsistent.

was capable of maintaining concentration, persistence and pace throughout a normal workday or workweek as related to simple tasks. (AR 423.) Plaintiff was able to interact adequately with coworkers and supervisors without difficulty and could deal with the demands of general public contact. (AR 423.) Plaintiff was able to make adjustments and avoid hazards in the workplace. (AR 423.)

In determining Plaintiff's mental residual capacity the ALJ also considered the consultative evaluation by Dr. Hirokawa. (AR 24.) Plaintiff was seen by Dr. Hirokawa on February 11, 2014 for a comprehensive physical examination. (AR 675-679.) Dr. Hirokawa administered testing and Plaintiff's scores were below average and his memory testing scores were compatible. (AR 24, 677-678.) Plaintiff's mental examination showed that he was fully oriented and appeared to have below average intelligence. (AR 24, 676.) Plaintiff was able to spell world forward and backward and could perform simple three step commands. (AR 24, 677.) His concentration for conversation and fund of knowledge were adequate. (AR 24, 677.) Recent and remote memory were intact. (AR 24, 677.) Plaintiff was able to do simple math and differentiate. (AR 24, 677.) Plaintiff's mood was depressed and affect was restricted. (AR 24, 677.)

Dr. Hirokawa diagnosed Plaintiff with adjustment disorder with mixed depressed mood and low average IQ. (AR 24, 678.) Dr. Hirokawa used a system in which mild indicated some limitations, but the individual could generally function well. (AR 24, 679.) Moderate limitations meant the individual had limitations but was still able to function satisfactorily. (AR 24, 679.) Dr. Hirokawa opined that Plaintiff was mildly impaired in his ability to follow simple instructions and to maintain adequate pace or persistence to perform one or two step simple repetitive tasks. (AR 24, 679.) Plaintiff had moderate limitations in all other areas of mental functioning, meaning he was able to function satisfactorily. (AR 24, 679.) The ALJ gave great weight to Dr. Hirokawa's opinion that Plaintiff was able to perform simple routine tasks as it was consistent with his activities of daily living and the results of psychological testing. (AR 24, 679.)

The Court notes that the findings of both Dr. Garcia and Dr. Hirokawa do not conflict.

1  As the ALJ found, Dr. Hirokawa found that Plaintiff was mildly to moderately limited in all
2  areas. However, based upon his level of impairment ratings definitions, Dr. Hirokawa found that
3  Plaintiff was able to function satisfactorily. Dr. Hirokawa found that Plaintiff was limited to one
4  or two step simple repetitive tasks. Similarly Dr. Garcia found that Plaintiff was able to function
5  adequately but was limited to simple one to two step tasks.

6  While Plaintiff argues that the ALJ did not include the moderate limitations found by
7  both Dr. Garcia and Dr. Hirokawa, an ALJ is not required to discuss all evidence presented.
8  Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984). Here, the ALJ considered Dr. Garcia
9  and Dr. Hirokawa's ultimate conclusions which incorporated their findings in each functional
10 area. Neither Dr. Garcia nor Dr. Hirokawa included any other limitations based on Plaintiff's
11 mental capacity.

12 Finally, the Court finds that Plaintiff's reliance on an unpublished Ninth Circuit decision,
13 Bagby v. Comm'r of Soc. Sec., 606 F. App'x 888, 890 (9th Cir. 2015), is misplaced. While the
14 appellate court found in Bagby that the ALJ did not include all the plaintiff's credible limitations,
15 here Dr. Garcia found that Plaintiff was capable of maintaining concentration, persistence and
16 pace throughout a normal workday or workweek as related to simple tasks; could interact
17 adequately with coworkers and supervisors without difficulty; could deal with the demands of
18 general public contact; and could make adjustments and avoid hazards in the workplace. (AR
19 423.) Similarly, Dr. Hirokawa found that, other than the limitation to simple repetitive one to
20 two step tasks, Plaintiff was able to function adequately in all areas. (AR 679.) The ALJ did not
21 err by failing to include the moderate findings in Plaintiff's residual functional capacity.

22 The ALJ considered the limitations found by Dr. Hirokawa and Dr. Garcia and adopted
23 them in developing Plaintiff's residual functional capacity assessment. The ALJ did not err by
24 not including the moderate limitations found by Dr. Garcia or Dr. Hirokawa in Plaintiff's
25 residual functional capacity.

26     2.    <u>Simple Routine Tasks</u>

27 Plaintiff argues that the jobs identified by the VE conflict with the DOT because Plaintiff
28 is limited to one to two step simple tasks. Although Plaintiff presents this as an argument a step

five challenge, the Court finds that the appropriate issue presented is that the ALJ found that Plaintiff was limited to simple routine tasks when the opinion of both Dr. Garcia and Dr. Hirokawa found that Plaintiff was only capable of performing one to two step tasks.

As discussed above, both Dr. Garcia and Dr. Hirokawa found that Plaintiff was limited to performing simple one to two step tasks. The ALJ's determination that Plaintiff was able to perform simple, repetitive tasks is not supported by substantial evidence in the record.

### 3. Error Was Not Harmless

The Court next considers whether this error was harmless. In determining whether a claimant is able to perform jobs that exist in the national economy at Step Five, the ALJ must determine what is the most the claimant can do despite the physical and mental limitations that are caused by his impairments and symptoms. Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015). Once the claimant's limitations are addressed, the ALJ considers the potential occupations that the claimant may be able to perform. 20 C.F.R. ¶ 416.966. To make this determination, "the ALJ relies on the DOT, which is the [Social Security Administration's] primary source of reliable job information regarding jobs that exist in the national economy." Zavalin, 778 F.3d at 845-46 (internal punctuation omitted). "The DOT describes the requirements for each listed occupation, including the necessary General Educational Development ("GED") levels; that is, "aspects of education (formal and informal) ... required of the worker for satisfactory job performance." Id. at 846 (citing DOT, App. C, 1991 WL 688702 (4th ed.1991)). "The GED levels includes the reasoning ability required to perform the job, ranging from Level 1 (which requires the least reasoning ability) to Level 6 (which requires the most)." Zavalin, 778 F.3d at 846 (citing DOT, App. C, 1991 WL 688702 (4th ed.1991)).

All the jobs identified by the ALJ require level 2 or 3 reasoning. A cashier II requires reasoning level 3 (DOT 211.462-010 CASHIER II, DICOT 211.462-010); a fast food worker requires reasoning level 2 (DOT 311.472-010 FAST-FOODS WORKER, DICOT 311.472-010); and a cafeteria attendant requires a reasoning level 2 (DOT 311.677-010 CAFETERIA ATTENDANT, DICOT 311.677-010).

The reasoning levels at issue here are defined as follows:

12

> LEVEL 1 - Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.
>
> LEVEL 2 - Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.
>
> LEVEL 3 - Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.

Dictionary of Occupational Titles, APPENDIX C - COMPONENTS OF THE DEFINITION TRAILER, 1991 WL 688702 (4th Ed. 1991).

Courts within this Circuit have recognized the difference between a limitation to simple repetitive or routine tasks and simple one to two step tasks. Sayers v. Colvin, No. 3:14-CV-00253-RCJ, 2015 WL 5092669, at *12 (D. Nev. Aug. 25, 2015) (collecting cases). It is clear that a reasoning level of 1 is consistent with the limitation to simple one or two step tasks. Id. at *12.

In Zavalin, the Ninth Circuit considered whether a claimant limited to simple, routine or repetitive work could perform jobs that required level 3 reasoning. 778 F.3d at 846. The Ninth Circuit found that level 2 reasoning was consistent with the ability to perform simple routine tasks. Id. However, level 3 reasoning is at odds with the limitation to simple routine tasks because "it may be difficult for a person limited to simple, repetitive tasks to follow instructions in 'diagrammatic form' as such instructions can be abstract." Id. (quoting Adams v. Astrue, No. C 10–2008 DMR, 2011 WL 1833015, at *4 (N.D.Cal. May 13, 2011)).

Here, Plaintiff's limitation to one to two step tasks is inconsistent with the ability to perform level 2 or 3 reasoning. While some jobs that require level two reasoning may be consistent with a limitation to simple one to two step tasks, this would not always be the case. Where the DOT conflicts with the jobs identified by the VE during the hearing, the VE must provide an explanation for the conflict. Massachi v. Astrue, 486 F.3d 1149, 153 (9th Cir. 2007). The ALJ must determine if the VE's explanation is reasonable and whether there is a basis to rely on the VE testimony rather than the DOT. The limitation to one to two step tasks is a

deviation from the DOT which must be addressed by the ALJ. As the ALJ only identified jobs that required reasoning beyond Plaintiff's limitations without addressing the deviation from the DOT, the error was not harmless. Accordingly, this action shall be remanded for further proceedings to determine if Plaintiff's limitation to one to two step tasks precludes his ability to work.

### B.  Deviation from the DOT

Plaintiff contends that the jobs identified by the VE deviate from the DOT because Plaintiff is limited to occasional overhead reaching and the jobs identified by the VE require ability beyond Plaintiff's residual functional capacity. Defendant replies that there is no conflict with the DOT and the ALJ did not err.

As this action is being remanded to determine how Plaintiff's limitation to simple one to two step tasks will affect his ability to work, the ALJ should further inquire into how the limitation to occasionally reaching overhead will affect his ability to perform work. To the extent that the VE opines that there are jobs available which Plaintiff can perform, the VE should address how the limitation to occasional overhead reaching will affect his ability to find and keep any identified job.

### V.
### CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ did erred in determining that Plaintiff was able to perform simple, routine tasks. Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is GRANTED

//
//
//
//
//
//
//

IN PART AND DENIED IN PART.  The Court REMANDS this action back to the Commissioner for further administrative proceedings consistent with this opinion; and the Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **March 3, 2016**

UNITED STATES MAGISTRATE JUDGE